CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
3/10/2022
JULIA C. DUDLEY, CLERK
BY: s/ J. Vasquez
    DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**DANVILLE DIVISION**

**BETTY GREEN,**

      **Plaintiff,**

v.                                                          Civil Action No.   4:22-cv-00015

**EXPERIAN INFORMATION SOLUTIONS,**
**INC.**
**475 Anton Blvd, Costa Mesa, CA 92626**
**SERVE: David Anthony, registered agent**
        **TroutmanPepper LLP**
        **1001 Haxall Point**
        **Richmond, VA 23219**

      **Defendant.**

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Betty Green ("Plaintiff" or "Ms. Green"), brings her Complaint and Demand for Jury Trial ("Complaint") against Defendant Experian Information Solutions, Inc. ("Defendant" or "Experian"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.

### JURISDICTION AND VENUE

1. Jurisdiction arises under the Court's Federal Question jurisdiction and 15 U.S.C. § 1681 *et seq*.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

3. Defendant regularly transacts business within the District and Division. Defendant

regularly directs business at the District. Defendant voluntarily and purposefully avails itself of the protections of the District, whereby personal jurisdiction is established.

## PARTIES

4. Plaintiff, Betty Green, is a natural person who resides in Charlotte County, Virginia. Mrs. Green is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5. Experian regularly compiles and distributes consumer credit information in exchange for monetary compensation. Therefore, Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian maintains a principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626, and can be served with process through its registered agent in Richmond, Virginia.

6. At all times relevant to this Complaint, Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

7. Plaintiff incorporates the above paragraphs of this Complaint as though they are fully detailed herein.

8. In or around June 2021, Plaintiff attempted to purchase a $6,000 vehicle at Davis GMC ("GMC").

9. After selecting the vehicle, Plaintiff applied for an auto financing loan.

10. GMC denied Plaintiff's credit application.

11. Upon information and belief, Plaintiff was denied because GMC was unable to access her Experian consumer report and/or credit score.

12. Plaintiff then tried again with her fiancé, now-husband, as a co-signor for the

vehicle.

13. GMC again denied Plaintiff's credit application.

14. Upon information and belief, Plaintiff was denied again because GMC was unable to access her Experian consumer report and/or credit score.

15. Plaintiff then had her fiancé apply for the vehicle's financing in just his name.

16. Plaintiff's fiancé was approved.

17. Upon information and belief, GMC was unable to access Plaintiff's Experian consumer report and/or credit score because Defendant was reporting Plaintiff as "deceased."

18. In the alternative, upon information and belief, each time GMC attempted to access Plaintiff's Experian consumer report and/or credit score, Defendant flagged Plaintiff for fraud.

19. Upon information and belief, had Defendant not reported Plaintiff as "deceased," Plaintiff would have been more likely to be approved for the vehicle without a co-signor.

20. Upon information and belief, had Defendant not reported Plaintiff as "deceased," Plaintiff would have been approved for the vehicle with a co-signor.

21. On or about July 20, 2021, Plaintiff applied for a CapitalOne credit card.

22. Plaintiff hoped that she could use the CapitalOne credit card to finance her trip to Alaska, purchase Christmas gifts, purchase an ATV, and continue to build her credit.

23. CapitalOne denied Plaintiff's credit application.

24. Plaintiff and her fiancé were shocked that she was denied.

25. Upon information and belief, Plaintiff's CapitalOne credit application was denied because Defendant was reporting Plaintiff as "deceased."

26. Upon information and belief, had Defendant not reported Plaintiff as "deceased," Plaintiff would have been more likely to be approved for the CapitalOne credit card.

27.     On or about February 1, 2022, Plaintiff received a copy of her Experian consumer report.

28.     Plaintiff was shocked to see Defendant was reporting her as "deceased" as she is in fact, alive.

29.     Defendant was reporting Plaintiff as "deceased" in the "Responsibility" field of her SyncB/Walmart DC tradeline (Account No. 520161XXXXXXXXXX).

30.     Upon information and belief, as of the filing of this Complaint, Defendant is still reporting Plaintiff as "deceased."

31.     Upon information and belief, Defendant did not receive information from the Social Security Administration ("SSA") that indicated Plaintiff was "deceased."

32.     Rather, Defendant "learned" that Plaintiff was "deceased" from the furnisher, Synchrony Bank/Walmart DC ("Synchrony").

33.     Upon information and belief, Synchrony furnished information to the consumer reporting agencies (CRAs) between June 2021 and the present that indicated Plaintiff was "deceased."

34.     Upon information and belief, Defendant knew or had reason to know that Synchrony was an unreliable furnisher of consumer information.

35.     Upon information and belief, Defendant blindly reported the information furnished by Synchrony without regard for its unreliability.

36.     Upon information and belief, Defendant inaccurately reported Plaintiff as "deceased" while simultaneously receiving information that directly conflicted with Plaintiff being "deceased."

37.     Upon information and belief, Defendant received information indicating that

Plaintiff was actively applying for credit.

38. Typically, deceased persons do not apply for credit (in the absence of fraud).

39. Despite having notice of Plaintiff's vitality and reporting her ongoing credit applications, Defendant inaccurately reported Plaintiff as "deceased."

40. Upon information and belief, Defendant failed to maintain reasonable procedures to block the inaccurate information furnished by Synchrony, despite being on notice that the information was inaccurate.

41. Upon information and belief, the consumer reporting agencies (CRAs) share information about consumers with each other.

42. Upon information and belief, non-parties Equifax and Trans Union did not report Plaintiff as a deceased person, even though all three CRAs received the same information from Synchrony.

43. Upon information and belief, only Defendant failed to block the inaccurate reporting by Synchrony.

44. Plaintiff's Experian consumer report shows that it published to third parties a copy of Plaintiff's consumer report containing the "deceased" notation or indicated that there was no consumer report.

45. Despite desiring to apply for new credit, Plaintiff has involuntarily removed herself from the credit market out of sheer fear that she will be denied, resulting in humiliation and damage to her reputation, due to the inaccurate reporting.

46. Upon information and belief, a deceased person does not have a consumer report that is accessible to creditors.

47. Upon information and belief, a deceased notation on a consumer report indicates a

high risk of fraud and is scored as a high risk of fraud.

48.     As a direct result of Defendant's conduct, Plaintiff was injured and has suffered actual damages in the form of stress, sleepless nights, mental anguish, emotional distress, wasted time, credit denial, and decreased creditworthiness.

49.     As a direct result of Defendant's conduct, Plaintiff was deprived of the opportunity to build her credit.

50.     Specifically, Plaintiff was denied her application for auto financing (with and without a co-signor).

51.     Plaintiff was also denied a CapitalOne credit card.

52.     Without the CapitalOne credit card, Plaintiff was on a tight budget for Christmas gifts, was unable to purchase an ATV under her name, was denied the opportunity to build her credit, and is also unable to use the credit card for her upcoming trip to Alaska.

53.     Plaintiff is also nervous to travel to visit her out-of-state family members (elderly mother, son, and grandson) without having a credit card.

54.     Plaintiff fears that the "deceased" notation will continue to prevent her from being able to get credit.

55.     Consequently, Plaintiff has refrained from applying for credit altogether.

56.     Plaintiff fears that the inaccurate "deceased" notation will never be removed.

57.     Plaintiff worries that the "deceased" notation will cause issues with social security benefits later on.

58.     Plaintiff suffers from sleepless nights due to the stress, fear, and frustration caused by Defendant's inaccurate reporting.

59.     The conduct by Defendant is the exact conduct that Congress sought to address and

punish by enacting the FCRA, which are rooted in the common law causes of action of defamation and invasion of privacy.

60. As a direct result of Defendant's conduct, Plaintiff's time has been wasted.

61. This futile waste of time is also one of the injuries that Congress sought to address in enacting the FCRA, where only the CRAs and furnishers have complete control over the private information they share with each other and publish without taking the care necessary to ensure that it is maximally accurate.

## COUNT I
*Defendant's Violations of 15 U.S.C. § 1681e(b)*

62. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

63. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish, maintain, and/or follow reasonable procedures to assure maximum possible accuracy in the preparation and maintenance of Plaintiff's consumer reports and consumer file.

64. Specifically, Defendant failed to establish or maintain procedures that would prevent a living person from being erroneously reported as "deceased."

65. Additionally, Defendant failed to establish or maintain procedures to prevent it from reporting information contrary to its own knowledge and data.

66. Moreover, Defendant failed to maintain procedures that ensured it did not report Plaintiff as "deceased" while simultaneously updating Plaintiff's consumer report(s) and/or credit file with information indicating Plaintiff was alive (i.e., applying for credit).

67. If Defendant did in fact believe that Plaintiff was deceased, it unreasonably failed to maintain any procedure or policy that alerted it to ongoing credit transactions allegedly associated with a deceased person's personal identifiers.

68. As a result of Defendant's conduct, action and inaction, Plaintiff was injured resulting in actual damages, including but not limited to: stress, sleepless nights, mental anguish, emotional distress, wasted time, credit denial, and decreased creditworthiness.

69. Defendant's blind acceptance and reporting of Synchrony's "deceased" notation was a willful violation of the FCRA. Therefore, Defendant is liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. § 1681n.

70. Defendant has been on substantial notice for many years that its policies and procedures are ineffective at preventing the very kind of injury it inflicted on the Plaintiff by reporting her as deceased to a potential creditor.

71. Alternatively, Defendant's violations of the FCRA were negligent. Therefore, Defendant is liable to Plaintiff for statutory and actual damages. 15 U.S.C. § 1681o.

72. In any event, Defendant is liable for Plaintiff's reasonable attorney's fees and costs. 15 U.S.C. §§ 1681n, 1681o.

**TRIAL BY JURY**

73. Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Betty Green, respectfully requests judgment be entered against Defendant, for the following:

A. Actual damages pursuant to 15 U.S.C. §§ 1681n, 1681o;

B. Statutory damages pursuant to 15 U.S.C. §§ 1681n, 1681o;

C. Punitive damages pursuant to 15 U.S.C. § 1681n;

D. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n, 1681o;

E.  Any pre-judgment and post-judgment interest as may be allowed under the law; and

Other and further relief as the Court may deem just and proper.

Respectfully submitted this 10th day of March.

**BETTY GREEN**

*/s/ Susan M. Rotkis*
Susan M. Rotkis, VSB 40693
Of Counsel
The Consumer Justice Law Firm
8245 N. 85th Way
Scottsdale, Arizona 85258
T: (480) 626-1333
E: srotkis@cjl.law
*Attorney for Plaintiff*